Larry O. Folks (#012142)
**FOLKS HESS, PLLC**
1850 N. Central Avenue, Suite 1140
Phoenix, Arizona 85004
(602) 256-9152
folks@folkshess.com
*Attorneys for BMO Harris Bank N.A.*
2134-0004

**IN THE UNITED STATES BANKRUPTCY COURT**

**IN AND FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re: | **Case No. 2:21-bk-07132-BKM** |
| JOAQUIN JAIME, | **Chapter 13 Proceeding** |
| Debtors. | **OBJECTION TO CONFIRMATION OF DEBTOR'S CHAPTER 13 PLAN** |

BMO Harris Bank N.A., a national banking association ("Bank" or "BMO"), a secured creditor and party-in-interest herein, respectfully submits this Objection (the "Objection") to the approval of the Chapter 13 Plan (the "Plan") filed by JOAQUIN JAIME (the "Debtor"). This Objection is supported by the following Memorandum of Points and Authorities and all pleadings, evidence and declarations that are on file in this case. This Objection is submitted pursuant to 11 U.S.C. §§ 101, 1322 and 1325, Bankruptcy Rule 3015 and Local Bankruptcy Rule 2084-9.

The Court should issue an order denying confirmation of the Debtors' Chapter 13 Plan, because it fails to comply with the provisions of the Bankruptcy Code, and as such, is unconfirmable as a matter of law pursuant to 11 U.S.C. § 1325.

**I.  BACKGROUND FACTS**

1. On September 17, 2021 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 13 of the United States Bankruptcy Code.

2. Bank is the owner and holder of a purchase money security agreement dated November 29, 2018, covering collateral described as a 2019 Porsche Cayenne

identified as VIN #WP1AA2AYXKDA01233 (the "Vehicle"). True and correct copies of the Retail Installment Sale Contract – Simple Finance Charge (the "Note") and the Lien and Title Information of the Vehicle evidencing Bank's first, valid, prior and perfected security interest and lien upon the Vehicle are attached hereto as **Exhibits "A" and "B"** and are incorporated herein by reference.

3. The Debtor is the borrower on the Note.

4. The *balance* due and owing to Bank as of the Petition Date was $61,168.39

5. The Note rate is 6.64% per annum.

6. Debtor's Plan proposes to value the Vehicle as $45,000.00 and an interest rate of 5.25%.

**II.  THE COLLATERAL IS UNDERVALUED.**

Pursuant to 11 U.S.C. §506(a)(2), with respect to personal property securing an allowed claim, the value of the property shall be the *replacement* value of the property as of the date of the bankruptcy filing, without any deductions for costs of sale or marketing; i.e.: the cost to the Debtor to replace the collateral.

The Debtor incorrectly values the collateral, the Vehicle. The Plan offers to pay Bank's secured claim at a value of $45,000.00. Whereas, Bank asserts the replacement value of the collateral is $74,600.00. S*ee* **Exhibit "C"** attached hereto which is a true and correct copy of a Manheim Market Report. Thus, the Plan must be amended to pay Bank's secured claim accordingly. More specifically, the Plan must be amended to pay Bank's secured claim in the amount of $74,600.00.

**III.  BANK IS ENTITLED TO 1% ADEQUATE PROTECTION**

Bank Is entitled to adequate protection of its secured claim as of the date the petition was filed. The Plan proposes to pay Bank adequate protection in the monthly amount of $600.00 which Bank contends is less than one percent (1.00%) of the value of the Vehicle which serves as its collateral. Bank requests adequate protection in the amount of one percent (1.00%) of the value of its collateral, or $746.00, to be paid to

Bank immediately, beginning from the first Plan payment received by the Trustee and continuing until Bank begins to receive its scheduled Plan payments on its secured claim.

Any adequate protection payments received by Bank will be credited toward the amount of Bank's secured claim to be paid through the Plan. Bank further requests that in the event that the case is either dismissed or converted, any adequate protection payments that have been accumulated by the trustee on behalf of Bank, shall be paid to Bank in the accumulated amount, except that in the event that there is insufficient funding to pay the adequate protection and administrative claims, that the adequate protection and administrative claims shall be paid pro rata. The trustee shall be entitled to his statutory fee for any adequate protection payments paid.

### IV. DEBTOR'S PLAN IS NOT FEASIBLE

As proposed, the Plan is not feasible. The Debtor will not be able to make all plan payments under the Plan and comply with the terms of the Plan pursuant to 11 U.S.C. § 1325(a)(6). Debtor proposes a monthly Plan payment which does not account for the total amount of Bank's and other secured creditor's allowed secured claims or adequate protection payments. The Plan cannot be confirmed.

Importantly, the Debtor, as the proponent of a Chapter 13 plan, bears the burden of proving that the plan fulfills all of the confirmation requirements in a Chapter 13 case. *In re Warren,* 89 B.R. 87 (9th Cir. BAP 1988). *In re Wolff,* 22 B.R. 510 (9th Cir. BAP 1982). The Debtor cannot carry the burden of proof in this case. As such, the Plan must not be confirmed.

The secured creditor herein objects to the Plan and asserts the plan should not be confirmed for the following reasons:

a. The Plan fails to properly value the Bank's collateral;
b. The Plan fails to provide to an appropriate amount of adequate protection to Bank; and
c. The Plan fails on feasibility.

**WHEREFORE**, based upon the foregoing, Bank requests that the Court issue an Order denying confirmation of the Debtor's Chapter 13 Plan and providing for such other relief as is appropriate.

DATED this 20th day of October, 2021.

**FOLKS HESS, PLLC**

By:*/s/ Larry O. Folks (#012142)*
    Larry O. Folks
    1850 N. Central Ave., #1140
    Phoenix, AZ 85004
    *Attorney for BMO Harris Bank N.A.*

**ORIGINAL** filed by **ECF** and
**COPIES** of the foregoing mailed
this 21st day of October, 2021, to:

**JOAQUINE JAIME**
12042 West Belmont Drive
Avondale, AZ 85323
*Debtor*

**BENJAMIN WRIGHT, ESQ.**
WRIGHT LAW OFFICES
2999 North 44th Street, Suite 250
Phoenix, AZ 85018
Email: bwright@wloaz.com
*Attorney for the Debtor*

**EDWARD J. MANEY**
CHAPTER 13 TRUSTEE
101 North First Avenue, Suite 1775
Phoenix, AZ 85003
*Chapter 13 Trustee*

**U.S. TRUSTEE**
OFFICE OF THE U.S. TRUSTEE
230 NORTH FIRST AVENUE
SUITE 204
PHOENIX, AZ 85003
*U.S. Trustee*

By: */s/ Tara Higgins*
*An employee of FOLKS HESS, PLLC*

# Exhibit "A"

# LAW 553-AZ-eps-14 1/18

## RETAIL INSTALLMENT SALE CONTRACT
## SIMPLE FINANCE CHARGE

Dealer Number _____  Contract Number _____

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| JOAQUIN JAIME<br>5205 N 200TH AVE<br>LITCHFIELD PARK AZ 85340 | N/A | PORSCHE CHANDLER<br>1010 S. GILBERT ROAD<br>CHANDLER AZ 85286 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements in this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Odometer | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| NEW | 2019 | PORSCHE CAYENNE | 326 | WP1AA2AYXKDA01233 | Personal, family, or household unless otherwise indicated below<br>☐ business<br>☐ agricultural ☒ N/A |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $19000.00 |
|---|---|---|---|---|
| 6.64 % | $ 16677.61 | $ 65020.79 | $ 81698.40 | $ 100698.40 |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 84 | 972.60 | Monthly beginning 01/13/2019 |
| N/A | N/A | N/A |

Or As Follows: N/A

**Late Charge.** If payment is not received in full within 10 days after it is due, you will pay a late charge of 5% of the part of the payment that is late.
**Prepayment.** If you pay early, you will not have to pay a penalty.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

**APPLICABLE LAW**
Federal law and the law of the state of the Seller's address shown in this contract apply to this contract.

### WARRANTIES
Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties on the vehicle, except as described below for used vehicles. Making no warranties means that the Seller is selling the vehicle as is – not expressly warranted or guaranteed and without any implied warranties of merchantability (except as described below) or of fitness for a particular purpose.
This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

**Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.
Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

### FOR USED VEHICLES ONLY
The Seller hereby warrants that this vehicle will be fit for the ordinary purposes for which the vehicle is used for 15 days or 500 miles after delivery, whichever is earlier, except with regard to particular defects disclosed on the first page of this agreement. You (the purchaser) will have to pay up to $25.00 for each of the first two repairs if the warranty is violated.
**ATTENTION PURCHASER:** SIGN HERE ONLY IF THE DEALER TOLD YOU THAT THIS VEHICLE HAS THE FOLLOWING PROBLEM(S) AND THAT YOU AGREE TO BUY THE VEHICLE ON THOSE TERMS:
ATENCIÓN COMPRADOR: FIRME AQUÍ SOLAMENTE SI EL VENDEDOR LE HA DICHO QUE EL VEHÍCULO TIENE EL/LOS SIGUIENTE(S) PROBLEMA(S) Y QUE USTED ESTÁ DE ACUERDO EN COMPRAR EL VEHÍCULO BAJO ESTOS TÉRMINOS:

1. N/A    2. N/A    3. N/A

X N/A _____ N/A    X N/A _____ N/A
Buyer Signs    (Date)    Co-Buyer Signs    (Date)

**NOTICE:** ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

The preceding NOTICE applies only to goods or services obtained primarily for personal, family, or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

Buyer Initials X ____  Co-Buyer Initials X N/A    ORIGINAL LIENHOLDER    LAW 553-AZ-eps-14 1/18 v1  Page 1 of 4

## ITEMIZATION OF AMOUNT FINANCED

1. Cash Price
   - A. Cash Price of Motor Vehicle (including accessories, services) $ 77900.00
   - B. Sales Tax $ 4594.20
   - C. Prior Credit or Lease Balance paid to N/A $ N/A
   - D. Other DEALER DOCUMENTARY FEE $ 399.00
   - E. Other N/A $ N/A
   - F. Other N/A $ N/A
   - G. Other N/A $ N/A
   - H. Other N/A $ N/A
   - Total Cash Price (A through H) $ 82893.20 (1)

2. Total Downpayment =
   - Trade-in 2017 JEEP GRAND CHEROKEE
     (Year) (Make) (Model)
   - Gross Trade-In Allowance $ 19000.00
   - Less Pay Off Made By Seller $ N/A
   - Equals Net Trade In $ 19000.00
   - + Cash $ N/A
   - + Other N/A $ N/A
   - (If total downpayment is negative, enter "0" and see prior credit or lease balance, item 1C, above) $ 19000.00 (2)

3. Unpaid Balance of Cash Price (1 minus 2) $ 63893.20 (3)

4. Other Charges Including Amounts Paid to Others on Your Behalf
   (Seller may keep part of these amounts):
   - A. Cost of Optional Credit Insurance Paid to the Insurance Company or Companies.
     - Life $ N/A
     - Disability $ N/A   $ N/A
   - B. Other Optional Insurance Paid to Insurance Company or Companies $ N/A
   - C. Optional Gap Contract $ N/A
   - D. Official Fees Paid to Government Agencies $ N/A
   - E. Government Taxes Not Included in Cash Price $ N/A
   - F. Government License and/or Registration Fees (Identify) $ 1117.59
   - G. Government Certificate of Title Fees $ 10.00
   - H. Other Charges (Seller must identify who is paid and describe purpose)
     - to N/A for N/A $ N/A
     - to N/A for N/A $ N/A
     - to N/A for N/A $ N/A
     - to N/A for N/A $ N/A
     - to N/A for N/A $ N/A
     - to N/A for N/A $ N/A
     - to N/A for N/A $ N/A
     - to N/A for N/A $ N/A
     - to N/A for N/A $ N/A
   - Total Other Charges and Amounts Paid to Others on Your Behalf $ 1127.59 (4)

5. Amount Financed (3 + 4) $ 65020.79 (5)

If the "Amount Financed" exceeds $55,800 or if the motor vehicle is primarily for commercial use, the "Amount Financed" is also the "Final Cash Price Balance" and the "Total of Payments" is also the "Time Balance".

OPTION: ☐ You pay no finance charge if the Amount Financed, Item 5, is paid in full on or before N/A, Year N/A. SELLER'S INITIALS N/A

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 4C of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term N/A Mos. N/A Name of Gap Contract

I want to buy a gap contract.
Buyer Signs X N/A

**SELLER'S RIGHTS IN ABSENCE OF CREDIT APPROVAL:**
(a) You agree to furnish us any documentation necessary to verify information contained in the credit application. (b) You acknowledge that it may take a few days for us to verify your credit and assign this contract. In consideration of our agreeing to deliver the vehicle, you agree that if we are unable to assign the contract to any one of the financial institutions with which we regularly do business pursuant to terms of assignment acceptable to us, we may cancel this contract. (c) In the event we cancel this contract, we shall give you notice of the cancellation. Upon delivery of such notice, you shall immediately return the vehicle to us in the same condition as when sold reasonable wear and tear excepted. We agree, upon cancellation of this contract to restore to you all consideration we received in connection with this contract, including any trade-in vehicle. (d) In the event the vehicle is not immediately returned to us upon notice of our cancellation of this contract, you agree to pay and shall be liable to us for all expenses incurred by us in obtaining possession of the vehicle, including attorney's fees; and we shall have the right to repossess the vehicle with free right of entry wherever the vehicle may be found, as the law allows. (e) While the vehicle is in your possession, all terms of this contract, including those relating to use of the vehicle and insurance for the vehicle shall be in full force and all risk of loss or damage in the vehicle shall be assumed by you, you shall pay all reasonable repair costs related to any damage sustained by the vehicle while in your possession or control of and until the vehicle is returned to us.

---

**Insurance.** You may buy the physical damage insurance this contract requires from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

Check the insurance you want and sign below:
**Optional Credit Insurance**
☐ Credit Life: ☐ Buyer ☐ Co-Buyer ☐ Both
☐ Credit Disability: ☐ Buyer ☐ Co-Buyer ☐ Both
Premium:
Credit Life $ N/A
Credit Disability $ N/A
Insurance Company Name
N/A
Home Office Address
N/A

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

**Other Optional Insurance**
☐ N/A     N/A
Type of Insurance    Term
Premium $ N/A
Insurance Company Name
N/A
Home Office Address
N/A

☐ N/A     N/A
Type of Insurance    Term
Premium $ N/A
Insurance Company Name
N/A
Home Office Address
N/A

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.

I want the insurance checked above.

X N/A                                N/A
Buyer Signature                      Date

X N/A                                N/A
Co-Buyer Signature                   Date

**Returned Check Charge:** You agree to pay a charge of $25.00, plus actual charges assessed by a financial institution, if any check you give us is dishonored.

---

Buyer Initials X _____ Co-Buyer Initials X N/A    ORIGINAL-LIENHOLDER    LAW 553-AZ-eps-14 1/18 v1  Page 2 of 4

## GUARANTY

The undersigned, jointly and severally, guarantee payment of all amounts owing under this contract and the payment upon demand of the entire amount owing on this contract in the event of default in payment by Buyer named therein. The undersigned waives notice of performance, demands for performance, notice of non-performance, protests, notice of protests, notice of dishonor, notice of acceptance of this Guaranty, of any extensions in time of payment, of sale of any of the collateral and of all other notices to which the undersigned would be otherwise entitled by law and agrees to pay all amounts owing thereunder upon demand, without requiring any action or proceeding against Buyer, and specifically waives any right to require action against Buyer as provided in A.R.S. §§ 12-1641 et seq. The undersigned agree to deliver to Seller or, after assignment, to Assignee timely financial statements and any other information relating to the undersigned's financial condition as may be reasonably requested. The undersigned acknowledges receipt from the Seller, prior to signing below, of a separate "Notice to Cosigner."

| N/A | N/A |
|---|---|
| DATED AT | GUARANTOR |
| N/A | N/A |
| DATED AT | GUARANTOR |

Marital Community Property Joinder: The undersigned spouse of the Guarantor joins in the execution of this guaranty for the purpose of binding the marital property of the Guarantor, and the undersigned, in accordance with A.R.S. § 25-214 or other applicable law. THE UNDERSIGNED SPOUSE OF THE GUARANTOR ACKNOWLEDGES RECEIPT FROM THE SELLER, PRIOR TO SIGNING BELOW, OF A SEPARATE "NOTICE TO COSIGNER."

| N/A | N/A |
|---|---|
| Date | Spouse of the Guarantor |

☐ IF THE BOX IS CHECKED, THIS CONTRACT IS SUBJECT TO A BROKER FEE PAID BY THE SELLER TO N/A .

### NO COOLING OFF PERIOD

State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

You acknowledge an express intent to grant a security interest in the vehicle and hereby waive and abandon all personal property exemptions granted upon the vehicle, which is the subject of this contract. NOTICE: BY GIVING US A SECURITY INTEREST IN THE VEHICLE, YOU WAIVE ALL RIGHTS PROVIDED BY LAW TO CLAIM SUCH PROPERTY EXEMPT FROM PROCESS.

HOW THIS CONTRACT CAN BE CHANGED. This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.
Buyer Signs X _____ Co-Buyer Signs X N/A
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

NOTICE TO THE BUYER: (1) Do not sign this contract before you read it or if it contains any blank spaces. (2) You are entitled to an exact copy of the contract you sign.

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

| You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it. | ANY INSURANCE REFERRED TO IN THIS CONTRACT DOES NOT INCLUDE LIABILITY COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS. | The Arizona Department of Financial Institutions regulates the Seller and can be contacted at 2910 North 44th Street, Suite 310, Phoenix, Arizona 85018, (602) 255-4421, if you have any complaints concerning this contract. |
|---|---|---|

| X _____ | 11/29/2018 | X PORSCHE CHANDLER | 11/29/2018 |
|---|---|---|---|
| Buyer Signs | Date | Seller Signs | Date |
| X N/A | N/A | By X _____ | |
| Co-Buyer Signs | Date | | Title |

**SEE THE REST OF THIS CONTRACT FOR OTHER IMPORTANT TERMS AND AGREEMENTS.**

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here X N/A   Date N/A   Address N/A

Seller assigns its interest in this contract to 1200 E WARRENVILLE RD NAPERVILLE IL 60563 (Assignee) under the terms of Seller's agreement(s) with Assignee.
BMO HARRIS BANK NA
☐ Assigned with recourse    ☒ Assigned without recourse    ☐ Assigned with limited recourse

PORSCHE CHANDLER
Seller    By _____    Title GO

LAW FORM NO. 553-AZ-eps-14 (REV. 1/18)
©2018 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

ORIGINAL LIENHOLDER

LAW 553-AZ-eps-14 1/18 v1   Page 4 of 4

## OTHER IMPORTANT AGREEMENTS

1. **FINANCE CHARGE AND PAYMENTS**
   a. **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed with a day counted as 1/365th of a year (or 1/366th in a leap year).
   b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.
   c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 of this contract on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.
   d. **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

2. **YOUR OTHER PROMISES TO US**
   a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.
   b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.
   c. **Security Interest.**
      You give us a security interest in:
      - The vehicle and all parts or goods put on it;
      - All money or goods received (proceeds) for the vehicle;
      - All insurance, maintenance, service, or other contracts we finance for you; and
      - All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.
      
      This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.
   d. **Insurance you must have on the vehicle.**
      You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium for the insurance and a finance charge computed at the Annual Percentage Rate shown on page 1 of this contract or, at our option, the highest rate the law permits.
      If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.
   e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, we will subtract the refund from what you owe.

3. **IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**
   a. **You may owe late charges.** You will pay a late charge on each late payment as shown on page 1 of this contract. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.

   If you pay late, we may also take the steps described below.
   b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
      - You do not pay any payment on time;
      - You give us false, incomplete, or misleading information on a credit application;
      - You start a proceeding in bankruptcy or one is started against you or your property; or
      - You break any agreements in this contract.
      
      The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.
   c. **Debtor's Liability for Failure to Return Vehicle:** If you are in default, we may send you a notice of default. It is unlawful to fail to return a motor vehicle subject to a security interest within 30 days after receiving notice of default. A notice of default may be mailed to the address on the contract. It is your responsibility to keep the listed address current. Unlawful failure to return a motor vehicle subject to a security interest is a class 6 felony. Assuming there are no aggravating circumstances, and you have no prior felony convictions, the maximum penalty is 1.5 years in prison and a $150,000 fine.
   d. **You may have to pay collection costs.** If we hire an attorney to collect what you owe, you will pay the attorney's fee and court costs as the law allows. You will also pay any reasonable collection costs we incur as the law allows.
   e. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.
   f. **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.
   g. **We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.
      We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us unless the law provides otherwise. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.
   h. **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

4. **SERVICING AND COLLECTION CONTACTS**
   You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

# Exhibit "B"



Collateral Management Services
9750 Goethe Road | Sacramento, CA 95827
www.dealertrack.com

# BMO Harris Bank N.A.

## Lien and Title Information

### Account Information

| | | | |
|---|---|---|---|
| **Account Number** | ▉▉▉▉▉▉▉▉ | **Financed Date** | 11/29/2018 |
| **Loan Number** | | **Perfected Date** | 12/9/2018 |
| **Branch** | ▉▉▉▉ | **Payoff Date** | |
| **Borrower 1** | JOAQUIN JAIME | **Dealer ID** | ▉▉▉▉ |
| **Borrower 2** | | **Dealer** | PORSCHE CHANDLER |
| **Borrower Address** | 5205 N 200TH AVE<br>LITCHFIELD PARK, AZ 85340 | **Dealer Address** | 1010 S GILBERT RD<br>CHANDLER, AZ 852860000 |

### Lienholder

| | |
|---|---|
| **ELT Lien ID** | ▉▉▉▉ |
| **Lienholder** | BMO HARRIS BANK NA |
| **Lienholder Address** | PO BOX 660310<br>SACRAMENTO, CA 958660310 |
| **Lien Release Date** | |

### Vehicle and Titling Information

| | | | |
|---|---|---|---|
| **VIN** | WP1AA2AYXKDA01233 | **Issuance Date** | 12/7/2018 |
| **Title Number** | ▉▉▉▉ | **Received Date** | 12/9/2018 |
| **Title State** | AZ | **ELT/Paper** | ELECTRONIC |
| **Year** | 2019 | **Odometer Reading** | 326 |
| **Make** | PORS | **Branding** | |
| **Model** | | | |
| **Owner 1** | JOAQUIN JAIME | | |
| **Owner 2** | | | |
| **Owner Address** | 5205 N 200TH AVE<br>LITCHFIELD PARK, AZ 853406101 | | |

**Printed:** Friday, September 24, 2021 11:36:09 AM PST

# Exhibit "C"

 **MANHEIM MARKET REPORT** September 28, 2021 US Edition

Learn more about MMR in today's volatile market and see a daily trend of MMR Retention ✕

### 2019 PORSCHE CAYENNE V6 4D SUV 3.0L
WP1AA2AYXKDA01233

**MMR**

| BASE | | |
|---|---|---|
| **$63,400** | | |
| Avg Odo (mi) | | Avg Cond |
| 24,130 | | 4.5 |
| Typical Range | | |
| **$60,300** - **$66,500** | | |

| ADJUSTMENTS | ADJUSTED |
|---|---|
| Odometer<br>- - | - - |
| Region<br>- - | $63,400 |
| AutoGrade<br>- - | $60,300    $66,500 |
| Ext Color<br>- - | |

Numbers may not add exactly due to AutoGrad

### ▼ Similar Vehicles for Sale           View All ›


Adj MMR $78,100
**'19 cayenne**
s
28,999mi | SD


Adj MMR $74,800
**'19 cayenne**
E-Hybrid
27,809mi | SD


Adj MMR $62,300
**'19 cayenne**
Not Specified
31,700mi | SD


Adj MMR $??,???
**'19 cayenne**
Not Specified
21,411mi | SD

### ▼ Transactions    Showing 15 of 15                     ▼ Filter   📄 Export

| Date ▾ | Price | Odo (mi) | Grade | Eng/T | Ext Color | Type | Region | Auction |
|---|---|---|---|---|---|---|---|---|

Showing 15 of 15
* Transactions not in sample
Condition Reports from AutoGrade™ or Manheim Express Grade

| Date | Price | Odo (mi) | Grade | Eng/T | Ext Color | Type | Region | Auction |
|---|---|---|---|---|---|---|---|---|
| 9/24/21 | $63,000 | 35,324 | - - | 6CY/A | White | Regular | West Coast | Phoenix |
| 9/24/21 | $67,000* | 28,553 | 4.6 | 6GT/A | Blue | Regular | Northeast | Pennsylvania |
| 9/21/21 | $66,100* | 30,443 | 4.8 | 6GT/A | White | Lease | Southeast | Orlando |
| 9/21/21 | $66,200 | 12,745 | 4.6 | 6GT/A | Blue | Regular | Southeast | Orlando |
| 9/16/21 | $64,500 | 21,584 | 4.9 | 6GT/A | Blue | Regular | West Coast | Riverside |
| 9/16/21 | $65,000 | 20,047 | - - | 6GT/A | Black | Regular | Southeast | Fort Lauderdale |
| 9/16/21 | $63,600 | 18,574 | 4.3 | 6GT/A | Black | Regular | Southeast | Palm Beach |
| 9/15/21 | $65,250 | 17,056 | 4.1 | 6GT/A | Black | Regular | Southwest | Dallas |
| 9/15/21 | $67,000* | 28,686 | - - | 6GT/A | Black | Regular | Midwest | Chicago |
| 9/14/21 | $58,700 | 41,418 | 4.8 | 6GT/A | Blue | Regular | Southeast | Orlando |
| 9/9/21 | $55,600 | 47,893 | 4.4 | 6GT/- - | Brown | Lease | Northeast | myCentralAuction |
| 9/7/21 | $65,900 | 15,625 | - - | 6GT/A | Silver | Regular | Midwest | Detroit |
| 9/6/21 | $61,800 | 21,411 | - - | NON/- - | - - | Lease | Southeast | myCentralAuction |
| 8/31/21 | $63,500 | 20,278 | 4.4 | 6GT/A | Blue | Regular | Southeast | Orlando |
| 8/30/21 | $63,000 | 17,605 | 4.9 | 6GT/A | Purple | Regular | West Coast | Utah |

Showing 15 of 15
* Transactions not in sample
Condition Reports from AutoGrade™ or Manheim Express Grade

## Historical Average

| Past 30 Days | 6 Months Ago | Last Year |
|---|---|---|
| $63,000 | $61,800 | $62,900 |
| 24,130 mi | 20,913 mi | 12,087 mi |

## Projected Average

Next Month

$63,400

## Estimated Retail Value
Based on Advertised Retail Prices

# $74,600

Typical Range
**$71,000** - **$78,300**